UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BELAFONTE LOPEZ ROSIER,

        Petitioner,

v.                      Case No:  2:10-cv-457-Ftm-29UAM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

        Respondents.
_____/

**OPINION AND ORDER**

Belafonte Lopez Rosier ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 7). Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. 25). Petitioner filed a reply to the response (Doc. 32).

Petitioner raises seven claims for relief in his petition. Petitioner alleges that: (1) the state court erred by failing to conduct an adequate inquiry at each stage of the proceeding to ensure that Petitioner wished to continue self-representation; (2) he was denied due process of law because of an inadequate charging information and because of the State's failure to

adhere to Florida's speedy trial provisions; (3) he was denied his constitutional right to be present at a critical stage of his trial; (4) the State court lacked jurisdiction or authority to dispose of his case; (5) the prosecution withheld favorable evidence in violation of the Fourteenth Amendment; (6) appellate counsel did not effectively represent him on direct appeal; and (7) the evidence presented at trial was insufficient to support a conviction (Doc. 1 at 6-21).

Because this Court can "adequately assess [Petitioner's] claim without further factual development," an evidentiary hearing will not be conducted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003).  Upon due consideration of the petition, the response, the reply, and the state-court record, this Court concludes that each claim in the petition should be denied.

I.   **Background and Procedural History**

On October 29, 2004, Petitioner was charged by amended information with two counts of sexual battery on a child less than twelve years of age (counts one and five) and four counts of sexual activity with a child twelve years of age or older by a person in familial or custodial authority (counts two, three, four, and six) (Vol. 1 at 54-55).[1]

---

[1] Unless otherwise noted, references to volume numbers (Vol. __ at __) and exhibits (Ex. __ at __) are to those filed by Respondents on August 2, 2011 (Doc. 28).

After a jury trial, in which Petitioner proceeded *pro se*, Petitioner was found guilty of counts one, two, three, five, and six and acquitted on count four (Vol. 6 at 288, 355-57; Vol. 1 at 167-71). Petitioner was sentenced to life in prison on counts one and five and to concurrent thirty year prison terms on counts two, three, and six (Vol. 2 at 207-13).

Plaintiff appealed his conviction, and Florida's Second District Court of Appeal affirmed *per curiam* (Ex. 4); Rosier v. State, 969 So. 2d 1031 (Fla. 2d DCA 2007). Petitioner filed a motion to correct sentencing error and a supplemental motion to correct sentencing error (Ex. 14, 15). The motions were denied (Ex. 20). The Second District Court of Appeal affirmed *per curiam* (Ex. 23); Rosier v. State, 25 So.3d 1239 (Fla. 2d DCA 2009).

Petitioner filed a state petition for habeas corpus relief, raising claims of ineffective assistance of appellate counsel (Ex. 27). The Second District Court of Appeal denied the petition (Ex. 28); Rosier v. State, 979 So. 2d 231 (Fla. 2d DCA 2008).

Petitioner filed an amended motion pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion") in which he raised four grounds for relief (Ex. 33). The post-conviction court denied the motion, and Florida's Second District Court of

Appeal affirmed *per curiam* (Ex. 36, 39); <u>Rosier v. State</u>, 38 So.3d 145 (Fla. 2d DCA 2010).

The instant Petition was filed in this Court on July 21, 2010 (Doc. 1).

## II.   <u>Governing Legal Principles</u>

### a.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).

"[C]learly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18; <u>Ward</u>, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. *Standard for Ineffective Assistance of Counsel*

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. Because both parts of the Strickland test must be satisfied in

6

order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

7

As to the prejudice prong of the _Strickland_ standard, Petitioner's burden to demonstrate prejudice is high. _Wellington v. Moore_, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." _Strickland_, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." _Id._ at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." _Strickland_, 466 U.S. at 694.

### c. Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)
>>
>>> (i) there is an absence of available State corrective process; or
>>>
>>> (ii) circumstances exist that render such process ineffective

8

> to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995)(citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.

_Coleman_, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  _Alderman v. Zant_, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." _Wright v. Hopper_, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  _Henderson v. Haley_, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" _Murray v. Carrier_, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency.  _Bousley v. United States_, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no

10

reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### a. *Claim One*

Petitioner asserts that he was denied his Fifth and Sixth Amendment rights to counsel at arraignment, before commencement of trial, and at sentencing (Doc. 1 at 5). Specifically, Petitioner argues that he appeared in court for arraignment on September 29, 2003 without an attorney and that he was not given notice of the charges against him and did not enter a plea of guilty or not guilty at that time. *Id.* Petitioner also asserts that he was denied the assistance of counsel because the trial court failed to conduct Faretta[2] hearings at each stage of his criminal proceedings. Id.

---

[2] Faretta v. California, 422 U.S. 806 (1975). In Faretta, the Supreme Court of the United States held that criminal defendants have a constitutional right to refuse counsel and represent themselves in state criminal proceedings. Faretta established the procedures by which a trial court determines whether to allow a defendant to dispense with counsel and represent himself. "It is well-established that a defendant wishing to waive his right to counsel may do so by invoking his right to self-representation and confirming his knowing choice through a

Respondents argue that Claim One is unexhausted and procedurally defaulted (Doc 25 at 12-22). Specifically, Respondents note that Petitioner did not preserve any claim of the constitutional denial of counsel at his arraignment (Doc. 25 at 14). Respondents further argue that Petitioner did not present the constitutional dimension of his Faretta claim in his brief on appeal, but rather, argued the claim in terms of state law only. Id. at 12-15.

Petitioner counters that he could not have presented his claim of no counsel at arraignment because "he did not uncover the information until after the deadline of his direct appeal." (Doc. 32 at 12). Petitioner also argues that his appellate brief's citation to Faretta v. California "was sufficient to alert the court that [he] was raising a federal claim regarding waiver counsel, since Faretta is the leading Supreme Court case on that issue." (Doc. 32 at 14).

This Court agrees that Petitioner has not exhausted his Sixth Amendment claim regarding the lack of counsel at his arraignment. Petitioner's argument that he was unaware of this potential claim for relief in time to present it in state court does not constitute cause for the default. See Harmon v. Barton, 894 F.2d 1268 (11th Cir. 1990) (ignorance of the law fails to

cooperative dialogue with the court." United States v. Garey, 540 F.3d 1253, 1257 (11th Cir. 2008) (en banc).

establish cause for a procedural default); <u>Toole v. McDonough</u>, 379 F. App'x 883, 885 n.5 (11th Cir. 2010) (rejecting petitioner's contention that his *pro se* status and lack of legal knowledge constituted an external impediment justifying his failure to exhaust his claim).   Moreover, contrary to his current assertions, at his <u>Faretta</u> hearing, Petitioner indicated that he had entered his not-guilty plea with the assistance of counsel and that he had wished to plead not-guilty when he did so (Vol. VIII at 42-43). Because Petitioner has not exhausted this portion of Claim One nor presented a factual basis for the claim's assertion, the Court will not address the merits of Petitioner's argument that he was denied the assistance of counsel at his arraignment.[3]

However, Claim One is not completely unexhausted. Petitioner's appellant brief referenced <u>Faretta v. California</u> as the controlling Supreme Court case regarding self-representation (Ex. 2 at 6). Accordingly, to the extent Claim One is based upon the state courts' unreasonable application of <u>Faretta</u>, it will

---

[3] It would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim in state court because it could have and should have been raised on direct appeal. <u>See Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1989)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules precluding a second direct appeal and the time limitations for bringing an appeal bar a return to state court to present the claims. *See* Fla. R. App. P. 9.110(b). Therefore, Claim One is both unexhausted and procedurally barred.

be addressed on the merits. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'").

Petitioner makes two arguments in his current petition that may implicate Faretta. First, Petitioner argues that the State failed "to conduct adequate Faretta inquiries after [the initial inquiry] because it failed to renew its offer of counsel to [Petitioner] at each subsequent stage of the proceeding." (Doc. 1 at 6). Next, Petitioner argues that he requested stand-by counsel to "take over the case" during a pre-trial hearing on August 29, 2006 and that such a declaration should have triggered an inquiry into whether Petitioner wished to continue representing himself (Doc. 1 at 6; Ex. 2 at 9).

Petitioner's suggestion that the state court was required to conduct a new Faretta inquiry each time he appeared in court is not supported by Faretta or any other United States Supreme Court precedent (Doc. 1 at 5-6). Moreover, Petitioner has not demonstrated a substantial change in circumstances such that the state court would have been compelled to reassess its Faretta determination. See, e.g., United States v. Nunez, 137 F. App'x

214, 215–16 (11th Cir. 2005) ("If we were to place upon the district court an obligation to reassess its _Faretta_ hearing decision, we would do so only on a showing of a substantial change in circumstances since the initial hearing. _Cf._ _United States v. McBride_, 362 F.3d 360, 367 (6th Cir. 2004)").

To the extent Petitioner now asserts that there was a substantial change in circumstances when he equivocated during a pre-trial hearing as to whether stand-by counsel should take over his case, his assertions do not entitle him to relief. After Petitioner's _Faretta_ inquiry,[4] the trial court appointed public defender Shannon Brown ("Brown") as Petitioner's stand-by counsel (Vol. VIII at 30, 41). During a hearing two days before trial, Petitioner argued a number of motions to the trial court including a request for the appointment of "co-counsel" which was denied (Vol. III at 334-35).  The court questioned Petitioner as to whether he was requesting that Brown completely take over the case (Vol. III at 336).  Petitioner indicated that he did not wish for Brown to take over, but wanted her to sit next to him during trial (Vol. III at 337).  Subsequently, Petitioner expressed frustration with the court and twice requested that Brown take over (Vol. III at 337, 347).  The

---

[4] Petitioner does not disagree with the state court's determination at the _Faretta_ hearing that he was competent to and wished to represent himself.[4] _See_ Vol. VIII (transcript of state court hearing on Petitioner's request to represent himself).

court discussed the issue with Brown who stated that it would be unethical for her to say that she could be ready for trial in only two days (Vol. III at 348). The court noted that the trial would not be continued and told Brown that she needed to get "up to speed" if Petitioner wished for her to represent him (Vol. III at 347). Petitioner was instructed to make the final decision regarding Brown's representation by the morning of trial, but Petitioner proceeded to trial *pro se* with Brown as stand-by counsel (Vol. III at 348; Vol. IV at 3).

A criminal defendant enjoys no constitutional right to hybrid representation where, as here, the role of standby counsel changes upon the defendant's whim. McKaskle v. Wiggins, 465 U.S. 168, 183 (1984). That stand-by counsel may have been unprepared to take over Petitioner's defense when requested to do so does not violate the Supreme Court's decision in Faretta. The appointment of stand-by counsel is not a constitutional requirement, and "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." McKaskle, 465 U.S. at 183; Faretta, 422 U.S. at 834 n.46 (while a trial court may appoint standby counsel, such a determination in discretionary and not a constitutional requirement). This Court cannot conclude that Petitioner's pre-trial equivocation on Brown's representation was a "substantial change in circumstances" so as to require a renewed Faretta inquiry at his

16

trial or at sentencing. <u>Nunez</u>, 137 F. App'x at 215.  The state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner's claim that he was denied counsel at his arraignment is dismissed as unexhausted and procedurally barred. The state courts' adjudication of Petitioner's <u>Faretta</u> claim is denied pursuant to 28 U.S.C. § 2254(d).  Petitioner is not entitled to relief on Claim One.

### b.   *Claim Two*

Petitioner asserts that he was denied his Sixth Amendment right to a speedy trial and his Fourteenth Amendment right to due process because the State violated Florida's speedy trail rules (Doc. 1 at 8-9).  Respondents argue that Claim Two was not properly exhausted because Petitioner did not preserve and then raise the constitutional dimension of this ground on direct appeal (Doc. 25 at 24).  After review of the record, the Court agrees that Petitioner has not properly exhausted Claim Two.

In his brief on appeal, Petitioner raised only the issue of whether the trial court erred by failing to advise him of his continued right to assistance of counsel after his <u>Faretta</u> hearing (Ex. 2). Although Petitioner raised a speedy trial issue in a petition for writ of prohibition prior to trial (Ex. 8 at Ex. C)), he did not raise this ground on direct appeal nor did

17

he argue a federal constitutional claim in the writ.[5]  Therefore, the ground is unexhausted and procedurally barred under Florida law. Fla. R. Crim. P. 3.191; see also Brown v. State, 843 So. 2d 328 (Fla. 1st DCA 2003)(holding that when a writ of prohibition seeking discharge on speedy trial grounds is denied, the speedy trial issue can be raised on direct appeal). Petitioner has shown neither cause excusing the default nor actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, Claim Two is dismissed as unexhausted and procedurally barred.

### c. *Claim Three*

Petitioner alleges that he was denied his constitutional right to be present at a June 27, 2006 pre-trial hearing and that appellate counsel was ineffective for failing to raise this

---

[5] Petitioner's petition for writ of prohibition was premised entirely upon an alleged violation of Florida Rule of Criminal Procedure 3.191, not the United States Constitution (Ex. 8 at Ex. C).  The Florida speedy trial rule enforces the right to a speedy trial guaranteed by the Florida Constitution and Florida statute, not the United States Constitution. Allen v. Dep't of Corr. Fla., 288 F. App'x 643, 645 n.1 (11th Cir. 2008).  To the extent Petitioner is attempting to raise the same claim presented in his petition for writ of prohibition, such a claim presents an issue of purely state law.  Because habeas relief does not lie to correct errors of state law, were Claim Two not unexhausted and procedurally barred, it is still not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

issue on direct appeal (Doc. 1 at 10).  Respondents argue that this ground is unexhausted (Doc. 25 at 27).  Although Petitioner alleges that he raised this issue in his state habeas petition, a review of the petition shows otherwise (Ex. 27).  Accordingly, this claim is unexhausted.

Petitioner has not alleged, let alone demonstrated, objective cause for his failure to properly raise the claims in the state courts.[6]  Moreover, Petitioner has not established that a fundamental miscarriage of justice will result from application of the procedural bar. Florida's two-year statute of limitation and the state's successive petition doctrine bars Petitioner's returning to state court to present this claim. See Fla. R. App. P. 9.141. Therefore, Claim Three is dismissed as unexhausted and procedurally barred.

### d. Claim Four

Petitioner claims that the trial court lacked jurisdiction to try and sentence him (Doc. 1 at 13).  Specifically, Petitioner alleges that: the first charging information filed by the state was defective because it failed to allege an essential element of the offense; the prosecution amended the charging information after the state speedy trial period had lapsed;  his

---

[6] By failing to allege such in his state habeas petition, Petitioner has also defaulted any argument that ineffective assistance of appellate counsel was the cause of his procedural default.

trial was not timely commenced after Petitioner filed notice of expiration of speedy trial; the state court did not hold a hearing or commence trial within the speedy trial recapture period; the prosecution failed to object to Petitioner's "sworn motion to dismiss"; his judgment was entered while a petition for writ of prohibition was still pending and is thus, a nullity; and the charging document was based only upon an affidavit and report by the police (Doc. 1 at 13-14).

Even though Petitioner raised these issues in his Rule 3.850 motion for post-conviction relief, Respondents argue that Petitioner has procedurally defaulted this claim by not preserving and raising it on direct appeal (Doc. 25 at 30). Indeed, a claim that a Petitioner's speedy trial rights were violated is properly raised on direct appeal, rather than in post-conviction collateral proceedings. See Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). In that regard, Claim Four is unexhausted and procedurally barred. However, when these issues were raised in Petitioner's Rule 3.850 motion, the post-conviction court addressed them on the merits (Ex. 33). The state court has therefore, told this Court how the issue would have been resolved under state law. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005)("It is a

'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'")(quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).[7]

Even assuming, *arguendo*, that Claim Four has been exhausted and can be construed as a due process claim, Petitioner cannot prevail.  In his memorandum of law in support of his Rule 3.850 motion, Petitioner argued, in terms of state law only, that the court lacked jurisdiction to hear his case "absent testimony under oath from material witness(es) administered by a person duly authorized to administer oaths" and that the court lost jurisdiction to convict Petitioner based upon violations of Florida's speedy trial rules (Doc. 33 at 3, 7).[8]  The post-conviction court denied the claims in a detailed order.  First, the court determined that the amended information filed against Petitioner on October 29, 2004 properly charged Petitioner with the felonies of sexual battery and sexual activity with a child and that the prosecutor certified that he received testimony

---

[7] To the extent Petitioner argues that the state courts' rejection of Claim Four was based upon a misapplication of Florida law, the claim is not cognizable on habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

[8] Petitioner did not raise a claim in state post-conviction proceedings alleging that the original information was defective because it failed to allege an essential element of the offense. Accordingly, this portion of Claim Four is completely unexhausted and will not be addressed by this Court.

under oath supporting the charge (Doc. 36 at 2). Next, the post-conviction court addressed Petitioner's allegations of speedy trial violations and determined that the claims were without merit:

> As to the Defendant's claim of a speedy trial violation, the record conclusively refutes this allegation. In the Defendant's motion, he states that neither he nor his attorney "ever requested a continuance or waiver of speedy trial within the 175 day speedy trial time. However, as the State points out in its response, the Defendant did waive his speedy trial rights during that period and numerous times thereafter. Specifically, the Defendant was arrested on August 21, 2003, and at the request of the Defense, a continuance was granted and speedy trial rights were waived on December 5, 2003. Speedy Trial was again waived when the Defendant requested additional continuances on April 2, 2004, June 4, 2004, July 28, 2004, September 8, 2004 and October 20, 2004. The amended information was filed on October 29, 2004. Subsequently, the Defense again requested additional continuances and waived speedy trial rights on January 5, 2005, February 23, 2005, April 20, 2005, June 22, 2005, August 24, 2005, September 14, 2005, November 9, 2005, and March 14, 2006. The courts of this state have held that "any express waiver of speedy trial, whether by defense motion to continue or otherwise, stands as an ongoing waiver as to any newly filed information arising out of the same incident, "even if the charges are more serious that the previously filed charges. Atkins v. State, 785 So. 2d 1219, 1220 (Fla. 4th DCA 2001). Because the Defendant moved for continuances during the pendency of both the original and amended informations, he cannot now claim that he Speedy Trial rights were violated.

(Ex. 36 at 3-4) (internal citations to record omitted).

Petitioner now argues that the state court's adjudication of this claim was based upon an unreasonable determination of the facts because, even though the clerk's docket sheet for his case indicated that Petitioner waived speedy trial on December 5, 2003 (Vol. I at 9), the record evidence is insufficient to show that he actually waived his speedy trial rights on that date (Doc. 32 at 18). Federal habeas courts will review a state court's factual findings only to determine whether they were unreasonable in light of the evidence presented, 28 U.S.C. § 2254(d)(2), or whether the presumption that they are correct was rebutted by "clear and convincing" evidence, 28 U.S.C. § 2254(e)(1).

Petitioner has presented no evidence, other than his own assertions, to rebut the post-conviction court's reasonable determination that Petitioner waived his speedy trail rights during the 175-day speedy trial period and numerous times thereafter. Therefore, he has not shown that the state court's adjudication of this claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, in addition to being dismissed as unexhausted and procedurally barred, Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

### e.   Claim Five

Petitioner alleges that, in violation of the Fourteenth Amendment, the prosecution withheld evidence that could have helped Petitioner's case (Doc. 1 at 16). Specifically, Petitioner alleges that the State violated Brady v. Maryland[9] by not: providing the search warrant and probable cause affidavit listed on the State's evidence list and arrest affidavit; providing written permission from the victim's mother authorizing the police to take possession of DNA evidence for testing; disclosing the sworn testimony of material witness(es) relied upon by the prosecution prior to the filing of the felony information; providing evidence of other crimes charged between February 23, 2003 and February 23, 2004; disclosing medical exams, reports, and procedures employed and the medical staff's identity; and providing a better address for the victim and other individuals involved in the case (Doc. 1 at 17).

Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court denied the claim as procedurally barred from post-conviction review because it should have been presented on direct appeal (Ex. 36 at 4). A federal habeas court will not consider a claim where "the last state court rendering

---

[9] Brady v. Maryland, 373 U.S. 83 (1963).  In Brady, the Supreme Court held that withholding material exculpatory evidence violates due process.

a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 771 (11th Cir. 2003) (quotation marks and citation omitted).

Under Florida law, a claim is procedurally barred from collateral review if it could have been, but was not, raised on direct appeal. Rule 3.850 of the Florida Rules of Criminal Procedure governs the collateral review process in Florida, and states that "[t]his rule does not authorize relief on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." See also Bates v. Dugger, 604 So. 2d 457, 458 (Fla. 1992) ("Rule 3.850 does not authorize relief based upon grounds which could have been or should have been raised at trial and, if properly preserved, on direct appeal.") (quotation marks and citation omitted); Smith v. State, 445 So. 2d at 325.

To the extent Petitioner argues that ineffective assistance of appellate counsel excuses his procedural default, such a claim should have been raised in his state habeas petition, and it was not.[10]   In analyzing whether cause exists to excuse procedural default, this Court may address an ineffective

---

[10]   Although Petitioner asserts that he raised this claim, presumably as an ineffective assistance of appellate counsel claim, in his state habeas petition (Ex. 27), a review of the petition reveals that this claim was not raised therein.

assistance of appellate counsel claim only if cause is established for the procedural default of the claim of ineffective assistance of appellate counsel. Other than Petitioner's bare assertion that his appellate counsel was responsible for failing to raise the Brady claims on direct appeal, he has offered no facts to show cause for his failure to raise this claim in his habeas petition. Claim Five is dismissed as unexhausted and procedurally barred.

### f.   *Claim Six*

Petitioner alleges that he did not have effective counsel on direct appeal (Doc. 1 at 18). Specifically, Petitioner raises eight issues that he asserts should have been raised on direct appeal: (1) he was denied due process of law when stand-by counsel informed the court that she would not be adequately prepared to represent Petitioner at trial; (2) stand-by counsel should have disclosed to the trial court that she and Petitioner had adverse interests in how his case should be argued; (3) he had a right to refuse representation of the conflicted attorney; (4) the trial court erred when it denied Petitioner's speedy trial motions; (5) the trial court should have determined the qualifications of the State's DNA expert outside of the jury's presence; (6) the State was required to dismiss the case for lack of jurisdiction when the record demonstrated that the state was proceeding on offenses of which Petitioner was not accused;

(7) the trial court abused its discretion in expediting Petitioner's case; and (8) the trial court abused its discretion by denying Petitioner's motion for a judgment of acquittal (Doc. 1 at 18-19). Petitioner raised these claims in his state petition for writ of habeas corpus, and the Fifth District Court of Appeal denied the petition (Ex. 27; Ex. 28).

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the Strickland standard. See Smith v. Robbins, 528 U.S. 259, 285 (2000). The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel and determined that appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285-86 (11th Cir. 1984). Finally, Petitioner must demonstrate prejudice by showing that the arguments omitted from the appeal were significant enough to

have affected the outcome of the appeal. Nyhuis, 211 F.3d at
1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.
1988)). Petitioner cannot meet these standards.

Appellate counsel filed a brief on direct appeal raising
the single issue of whether the trial court erred by failing to
advise Petitioner of his continued right to assistance of
counsel before the commencement of trial and sentencing (Ex. 2).
Petitioner contends that counsel should have also raised each of
the issues he now raises in Claim Six.[11]   Petitioner has not
shown that Counsel was objectively unreasonable for failing to

---

[11] In support of this claim for ineffective assistance of
appellate counsel, Petitioner has attached to his petition
correspondence from his appellate counsel, Daniel L. Castillo
("Counsel") (Doc. 1 at Ex. D).   It is unclear whether any or all
of this correspondence was before the state court that
adjudicated the claim on the merits so that it may be considered
by this Court. Cullen v. Pinholster, 131 S. Ct. 1388, 1400
(2011).
    To the extent that Petitioner now presents "new" evidence
that was not presented to the Fifth District Court of Appeals,
such evidence will not be considered by this Court. Id. ("If a
claim has been adjudicated on the merits by a state court, a
federal habeas petitioner must overcome the limitation[s] of §
2254(d)(1) [and (d)(2)] on the record that was before that state
court.").   However, even were the Court to consider the letters,
they do not aid Petitioner. In a letter written in response to
Petitioner's complaint to the Florida Bar (Doc. 1 at Ex. D(2)),
Counsel noted that he had reviewed the record and found only one
meritorious issue to raise on appeal.   Counsel also stated that
he had considered the other issues raised by Petitioner, but he
"did not believe that they were meritorious nor were they
properly preserved." (Doc. 1 at Ex. D(1)).   Strategic decisions
by counsel are virtually unassailable. See Strickland, 466 U.S.
at 690 ("[S]trategic choices made after thorough investigation
of law and facts relevant to plausible options are virtually
unchallengeable.").

28

raise the omitted issues or that any of the issues would have been successful on appeal.

As to Petitioner's claim that appellate counsel should have argued that Petitioner was denied due process when stand-by counsel indicated that she would be unprepared to go to trial in two days, it was not unreasonable for Counsel to determine that such a claim would not succeed on appeal. Florida law does not require a court to grant a continuance to a defendant who has caused the shortened trial preparation time through his manipulation of the judicial system and later claims that he is unprepared to go to trial. Lawson v. State, 884 So. 2d 540, 546 (Fla. 4th DCA 2004). Because Petitioner caused stand-by counsel's alleged lack of preparation by his insistence that he proceed *pro se*, appellate counsel was not ineffective for concluding that this claim lacked merit.

To the extent Petitioner argues that stand-by counsel was ineffective because she disagreed with Petitioner as to the direction his case should proceed, Petitioner waived any claim of ineffective assistance of counsel by proceeding *pro se*. See Faretta, 422 U.S. at 834 n.46 ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"). Moreover, Petitioner presents no evidence demonstrating that his stand-by counsel was incompetent or

unable to effectively assist him as standby counsel. In fact, other than a blanket assertion that stand-by counsel's interests were adverse to his own, Petitioner has not explained how stand-by counsel's participation, or lack thereof, in his trial resulted in prejudice. Consequently, appellate counsel was not ineffective for concluding that this claim lacked merit.

Petitioner cannot show prejudice from appellate counsel's failure to argue his speedy trail claims on direct appeal. Nor can Petitioner show prejudice from Petitioner's claim that the state lacked jurisdiction to proceed on the amended information. Although not raised on direct appeal, these issues were considered by the post-conviction court in Petitioner's Rule 3.850 motion and they were determined to be without merit (Ex. 36 at 2-3). Accordingly, Petitioner cannot show prejudice from appellate counsel's failure to raise these claims on direct appeal.

Neither Petitioner's claim that the trial court should have determined the qualifications of the State's DNA expert outside of the jury's presence nor his claim that the trial court erroneously allowed his trial to be expedited were preserved for review. Petitioner's failure to preserve these issues bars appellate review unless Petitioner can establish a "fundamental error." See Archer v. State, 934 So. 2d 1187, 1205 (Fla. 2006) ("[A]ppellate counsel cannot be ineffective for

failing to raise issues not preserved for appeal. [ ] The only exception to this rule is when the claim involves fundamental error.")(internal citations omitted). Fundamental error is error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996) (quoting State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991)).

Petitioner has neither argued, nor explained, how his own failure to seek qualification of the State's DNA expert outside the presence of the jury amounted to fundamental error. Neither has Petitioner argued or explained how he suffered prejudice from his "expedited" trial – particularly considering that Petitioner presented numerous motions to the trial court in which he contended that his speedy trial rights were being violated by the State.  Because they were not preserved, Petitioner was barred from raising these claims on direct appeal, and appellate counsel was not ineffective for failing to raise these claims.

Finally, Petitioner's argument that appellate counsel erred by not arguing on direct appeal that the trial court abused its discretion in denying Petitioner's motion for a judgment of acquittal is without merit. Under Florida law, the state trial court should not grant a Florida Rule of Criminal Procedure

3.380 motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. See Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974). If the state's evidence creates an inconsistency with the defendant's theory of innocence, the trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency. Woods v. State, 733 So. 2d 980, 985 (Fla. 1999). As such, a motion for judgment of acquittal will be denied if the jury could infer guilt from competent evidence viewed in the light most favorable to the State.

In the instant case, sufficient evidence of Plaintiff's guilt was presented to the jury that, when viewing the evidence in the light most favorable to the State, guilt could be inferred.  The victim testified that, on several occasions when she was ten and eleven years old, Petitioner would touch his penis to her vagina and move back and forth (Vol. IV at 150-58). The victim testified that when she was twelve years old, Petitioner would touch her vagina with his fingers and that he would put his penis inside of her (Vol. VI at 158-66). She also testified that when she was twelve, Petitioner would put his penis inside her mouth (Vol. IV at 167).  She testified that when she was thirteen years old, she became pregnant and had an abortion (Vol. IV at 170-72).  A DNA test was run on the aborted

32

fetus, and the State's DNA expert testified that Petitioner was 19 million times more likely to be the biological father of the fetus than a random African American man (Vol. V at 223). The expert calculated the probability of Petitioner's paternity to be greater than 99.99 percent. Id.

The evidence was sufficient to sustain the charges of sexual battery on a child under twelve and of sexual activity with a child by a person with familial or custodial authority.[12] Accordingly, the trial court did not abuse its discretion when it denied Petitioner's motion for a judgment of acquittal. Appellate counsel had no grounds on which to raise this issue on direct appeal and was not ineffective for failing to do so. Each sub-claim raised in Claim Six is denied.

### g.   *Claim Seven*

Petitioner asserts that the evidence was insufficient to support his convictions (Doc. 1 at 21).  When evaluating the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

---

[12] Florida Statute § 794.011 defines sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]"  Florida Statute § 794.011(8)(b) states that "[A] person who is in a position of familial or custodial authority to a person less than 18 years of age and who engages in any act with that person while the person is 12 years of age or older but less than 18 years of age which constitutes sexual battery . . . commits a felony of the first degree[.]"

of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id.</u> at 326. After reviewing the evidence in a light most favorable to the prosecution, the Court concludes that the evidence presented at trial was sufficient such that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See* discussion *supra*, Claim Six. Thus, Petitioner is not entitled to habeas relief on Claim Seven.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.   **Certificate of Appealability**

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue. . .only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (citations omitted). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) filed by Belafonte Lopez Rosier is **DENIED,** and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of August, 2013.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 8-9
Copies to: All parties of record